UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

EMMANUEL AUGUSTIN, individually and as legal guardian of MARIE ODETTE ORIENTAL, an incapacitated person,

                                Plaintiff,

v.

AMERICAN AIRLINES, INC.,

                                Defendant.

**MEMORANDUM AND ORDER**
18-CV-01484 (LDH) (RER)

---

LaSHANN DeARCY HALL, United States District Judge:

Plaintiff Emmanuel Augustin, as legal guardian of Plaintiff Marie Odette Oriental, an incapacitated person, asserts claims against Defendant American Airlines, Inc. ("American Airlines"), for negligence and breach of contract.[1] (Am. Compl., ECF No. 19.) Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint in its entirety. (Notice Mot., ECF No. 30.)

## BACKGROUND[2]

On an unspecified date, Mr. Augustin's mother, Ms. Oriental, purchased a ticket for a March 13, 2016 flight, operated by Defendant, from New York to Haiti. (Am. Compl. ¶¶ 15–16.) At the time of booking, Ms. Oriental, a physically disabled Creole speaker, requested special-needs assistance for the duration of her travel, including during the boarding process. (*Id.* ¶ 18.) Such assistance included wheelchair and Creole-translation services. (*Id.* ¶¶ 19–20.)

---

[1] On November 26, 2018, the Court so-ordered the parties' stipulation of dismissal with prejudice of Plaintiffs' claim for negligence pursuant to the Air Carrier Access Act, 14 C.F.R. Part 382. (ECF No. 37.)

[2] The following facts are taken from the complaint and, unless otherwise indicated, are assumed to be true for the purposes of this memorandum and order.

On March 13, during the boarding process at John F. Kennedy Airport, Defendant's gate agents were notified that Ms. Oriental was in a visible state of crisis and in need of immediate assistance.  (*Id.* ¶¶ 15, 25.)  Within the span of nine minutes, an agent of Defendant called Mr. Augustin twice and each time informed him that Ms. Oriental had been deemed "unstable" and needed to be picked up from the airport.  (*Id.* ¶¶ 26–27.)  Defendant's agents took no further action with respect to Ms. Oriental.  (*Id.* ¶ 28.)  Ms. Oriental stood up from her wheelchair and wandered out of the gate area, out of the terminal, and into oncoming traffic, where police and paramedics found her in the midst of a massive stroke.  (*Id.* ¶¶ 28–29.)  The stroke left Ms. Oriental physically and mentally incapacitated:  She is unable to speak or write, is permanently wheelchair-bound, and has diminished mental capacity.  (*Id.* ¶¶ 5–6.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct.  *Id*.  While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss.  *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true."  *Id*. (citations omitted).

## DISCUSSION

I. **Negligence**

Defendant argues that Ms. Oriental's negligence claim is preempted by the Airline Deregulation Act of 1978 (the "ADA") and, in the alternative, that Ms. Oriental fails to adequately allege the existence of Defendant's duty to her. (Mem. Law Supp. Def., Am. Airlines, Inc.'s Mot. Dismiss ("Def.'s Mem.") 5–20, ECF No. 32.)  The Court disagrees.

A. **Federal Preemption**

The ADA expressly preempts any state from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). Although the Second Circuit has held that a state regulation requiring airlines to furnish fresh air, sanitation facilities, water, and food to passengers on flights delayed on ground for more than three hours relates to airline "service" and is therefore preempted by the ADA, the court has nonetheless recognized that the ADA "does not preempt all state law tort actions." *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 225 (2d Cir. 2008). However, the Second Circuit has not squarely identified the circumstances under which preemption may apply.

In the absence of such binding authority, the district court in *Rombom v. United Air Lines, Inc.*, established a three-factor test to determine whether a tort claim is preempted by the ADA. 867 F. Supp. 214, 221 (S.D.N.Y. 1994). *First*, the activity at issue must be an "airline service." *Id*. *Second*, the activity must "directly implicate[] a service," rather than "tenuously, remotely, or peripherally" affecting it. *Id*. at 222. *Third*, the allegedly tortious conduct must be "reasonably necessary to the provision of the service." *Id*. In *Rombom*, the plaintiff asserted negligence claims against the airline for (1) rude treatment by the flight crew in telling the plaintiff to be quiet while the plane was taxiing, (2) the pilot's decision to return to the gate, and

3

(3) the plaintiff's subsequent arrest. *Id.* at 223. The district court held that the ADA preempted claims for the first two categories of conduct but not the third. *Id.* at 223–24. The court reasoned that the flight attendants' allegedly spiteful motivation for having the plaintiff arrested was neither directly related to nor reasonably necessary for providing the service of a safe flight. *Id.* at 224. Numerous other district courts have relied on the *Rombom* test, including in *Spinrad v. Comair, Inc.*, 825 F. Supp. 2d 397, 409 (E.D.N.Y. 2011) (collecting cases). This Court, too, is persuaded by the reasoning of *Rombom* and shall apply its test for ADA preemption.[3]

The allegations in this case are not meaningfully different from the facts of *Spinrad*, where the plaintiff sought to recover damages she had sustained from falling off an airplane's exit stairs. 825 F. Supp. 2d at 401. There, as here, the defendant airline was aware that the elderly plaintiff required special assistance. *Id.* "Plaintiff's contention, essentially, [was] that defendant [had] failed to take due care in helping her to disembark from the aircraft." *Id.* at 410. The defendant airline sought summary judgment in part on the grounds that the plaintiff's single claim, for negligence, was preempted by the ADA. *See id.* at 400. The district court noted that the Second Circuit has provided "limited guidance" on construing the term "service" for the purpose of ADA preemption. *Id.* at 409. "Given the minimal impact of plaintiff's action on defendant's prices, routes, and services," the court continued, it would be inappropriate to find that the ADA preempted the plaintiff's negligence claim.[4] *Id.* at 414. A similar outcome is warranted here.

---

[3] In a recent non-precedential summary order, the Second Circuit distinguished between design-defect claims and classic negligence claims. *Fawemimo v. Am. Airlines, Inc.*, 751 F. App'x 16, at *19 (2d Cir. 2018) (summary order). The court held that a passenger's tort action for injuries allegedly caused by "an unsafe aircraft design" were preempted, but the court reiterated that the ADA "leav[es] room for personal injury actions that allege an airline was negligent in carrying out its policy." *Id.*

[4] The *Spinrad* court doubted whether the ADA's express-preemption clause "even applie[d]" to private tort actions, given the clause's express reference to only state conduct. 825 F. Supp. 2d at 412–13. Assuming the clause was

4

Although the alleged conduct occurred during the boarding process, which is likely a service for ADA purposes, Ms. Oriental's allegation is that Defendant failed to reasonably respond to Ms. Oriental's apparent health emergency. Defendant simply fails to show that its alleged acts or omissions were either directly related to or reasonably necessary for the provision of boarding services. Thus, the negligence claim is not preempted by the ADA.

### B.  Defendant's Duty to Ms. Oriental

Defendant further argues that Ms. Oriental's negligence claim must be dismissed on the merits on the ground that Defendant did not owe Ms. Oriental a duty to provide her with medical treatment, to contact emergency personnel, or to physically detain her at the gate area until Mr. Augustin arrived. (Def.'s Mem. 5–6.) Defendant misapprehends the applicable legal standard. "[T]he standard of care required of common carriers [is] the traditional, basic negligence standard of reasonable care under the circumstances." *Bethel v. N.Y.C. Transit Auth.*, 703 N.E.2d 1214, 1215 (N.Y. 1998). "Under that standard, there is no stratification of degrees of care as a matter of law. Rather, there are only different amounts of care, as a matter of fact." *Id.* (internal quotation marks and citations omitted).

> The objective, reasonable person standard in basic traditional negligence theory . . . necessarily takes into account the circumstances with which the actor was actually confronted when the accident occurred, including the reasonably perceivable risk and gravity of harm to others and any special relationship of dependency between the victim and the actor.

*Id.* at 1216.

Here, Ms. Oriental alleges that she was a fare-paying passenger ticketed to travel aboard a flight operated by Defendant, a common carrier. (Am. Compl. ¶¶ 15–16.) No more is required to adequately plead the existence of Defendant's duty of care toward Ms. Oriental. Whether

---

applicable, the court nonetheless found that the conduct at issue was not sufficiently related to airline services to be preempted. *Id.* at 413–14.

Defendant breached this duty is a question of fact to be resolved on summary judgment or after trial.

## II.     Breach of Contract

Defendant similarly argues, unpersuasively, that the ADA preempts Ms. Oriental's claim for breach of contract. In *American Airlines, Inc. v. Wolens*, the United States Supreme Court expressly rejected Defendant's argument that the ADA preempts breach-of-contract claims under state common law. 513 U.S. 219, 232–33 (1995). In *Wolens*, plaintiff members of American Airlines' frequent-flyer rewards program filed a class action alleging that the airline breached its contract with them by retroactively changing the terms of the rewards program. *Id.* at 224–25. The Supreme Court squarely held, in part, that "the ADA permits state-law-based court adjudications of routine breach-of-contract claims." *Id.* at 232. The Court reasoned:

> The conclusion that the ADA permits state-law-based court adjudication of routine breach-of-contract claims also makes sense of Congress' retention of the FAA's saving clause, § 1106, 49 U.S.C. App. § 1506 (preserving "the remedies now existing at common law or by statute"). The ADA's preemption clause, § 1305(a)(1), read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

*Id.* at 232–33.

Here, Ms. Oriental alleges that Defendant breached an express provision of a contract between the parties, causing her injuries.[5] (Am. Compl. ¶¶ 61–63.) As in *Wolens*, the ADA does not preempt this claim. Such a finding, however, does not end the Court's inquiry. That is because "definiteness as to material matters is of the very essence in contract law. Impenetrable

---

[5] Although neither party filed the contract of carriage, the Court assumes Ms. Oriental's factual assertions regarding the contractual provision at issue to be true for the purposes of this memorandum and order.

6

vagueness and uncertainty will not do." *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 417 N.E.2d 541, 543 (N.Y. 1981). In other words, "before the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained." *Id.* "Otherwise, a court, in intervening, would be imposing its own conception of what the parties should or might have undertaken, rather than confining itself to the implementation of a bargain to which they have mutually committed themselves." *Id.*

Ms. Oriental's failure to allege a sufficiently specific contractual obligation that covers Defendant's conduct at issue is fatal to her breach-of-contract claim. The obligation Defendant allegedly breached was to "provide [Ms. Oriental] with dignified, professional and courteous service at all times." (Am. Compl. ¶ 61.) Defendant correctly argues that Ms. Oriental's claim cannot arise out of this provision. (Def.'s Mem. 21–22.) As relevant here, the Merriam-Webster online dictionary defines the word "dignity" as "the quality or state of being worthy, honored, or esteemed."[6] It defines the word "professional" as "exhibiting a courteous, conscientious, and generally businesslike manner in the workplace."[7] And it defines the word "courteous" as "marked by respect for and consideration of others."[8] The Court cannot conclude from the contract's use of these vague terms that Defendant agreed to any specific conduct in response to Ms. Oriental's medical emergency. Accordingly, the claim must be dismissed.

\*   \*   \*

---

[6] *Dignity*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/dignity (last updated May 30, 2019).

[7] *Professional*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/professional (last updated May 27, 2019).

[8] *Courteous*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/courteous (last updated Apr. 13, 2019).

Finally, Mr. Augustin purports to assert contract and tort claims on his own behalf. However, he does not allege that any contract existed between him and Defendant or that Defendant owed him any duty directly. And to the extent Mr. Augustin asserts derivative claims for his loss of the consortium of Ms. Oriental, his mother (*see* Am. Compl. ¶¶ 45–46, 58–59, 70–71), such claims are not available under New York law. *De Angelis v. Lutheran Med. Ctr.*, 449 N.E.2d 406, 407 (N.Y. 1983) (holding that "the existence of the right of a husband or wife, in view of the nature of the marital relation, to bring an action derived from injuries to his or her spouse, to whatever extent it may be said to be analogous, does not warrant extending this right to a child"); *accord Sheldon v. PHH Corp.*, 135 F.3d 848, 852 (2d Cir. 1998). Within 30 days of the entry of this memorandum and order, Mr. Augustin shall show cause why the Court should not dismiss all claims he asserts on his own behalf.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED with respect to Ms. Oriental's negligence claim and GRANTED with respect to Ms. Oriental's breach-of-contract claim, which is dismissed without prejudice.

SO ORDERED.

Dated: Brooklyn, New York  
      June 7, 2019

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge